This case was held under advisement by consent of the judges, until November, when Warns, J. delivered the opinion of
Waties, Beevabh,
and himself, as follows.
(Gkimke, J. dissenting.)
The only question in this case is, whether the act passed in, 1801, extending the jurisdiction of magistrates to $30, be constitutional. Jn the year 1790, our State constitution was adopted, whicn piovides, that the trial by jury, as heretofore used in this State, shall be forever inviolably preserved. Article 9, section 6.
The act seems to refer, for explanation, to the second section of the same article, which provides, that the citizen shall in no case be deprived of the benefit of atrial by his peers, unless autl.orizedby thé law' of the land. What is to be understood by the terms “ law of the land,” the commentators on magna charta, whence the framers of our constitution, derived them, have ably and satisfactorily explained. These expositions, as applicable ■ to our constitution, have been re« *471 cognized in the able argument of Mr. Justice Waties, in the case of Zylstra v. the City Corporation of Charleston. That opinion, in the main, is satisfactory to my mind, and would be conclusive of the present question, did it appear to have been adopted in its full ex tent, by the other judges. I am not, however, prepared to regard this excellent method of trial as quite so sacred and inviolable, as it seems to.be in the opiuion alluded to. Although it be the birth right of the citizen, and one deservedly of high value, 1 regard it, like his other rights, too sacred to be invaded, except by himself, for the procurement of a greater good. But in establishing a system of political society, in which to give it validity, a union of individual wills is necessary, I am unable to discover why even the estimable trial by jury, venerable from the sanction of ages, may not be abandoned, modified, or entirely adopted, as may be deemed expedient. Such an expression of individual will in a constitution, must upon principle, be regarded : for it is the result of the- collective deliberation of the State, met as in a state of nature, to frame a compact for their future government. That homage, which, it is said, Judge Blackstone paid to parliamentary omnipotence, is due, upon every principle of political philosophy, to the constitutional compact of any government, so long as it remains unaltered, by those to whom it owes its existence. So long as man be allowed to be the most competent to govern himself, the union of public will, on any subject, is the best evidence of its being politically, if not morally, true.
This kind of political infallibility, I by no means attribute to the legislature, exeept on subjects particularly set apart for its cognizance. It is a mere creature: the constitution is the creator. Its powers are limited, and its functions directed to particular objects ; and we are placed as sentinels, to guard against its encroachments on power not its own. The constitution, in the clause alluded t«v has established an epoch, from which legislative innovation on the trial by jury shall cease. I have not said, that this instrument has legitimated the several instances of departure from this mode of trial, at the time of its adoption : I merely say, that it had power to do so. An historical examination of these exceptions from the general rule, will, in my mind, be the proper scale on which to graduate the legality of the act in question. At the time of the adoption of our constitution, the trial by jury was amongst the most valuable possessions of the citizen. It was the mode, which the* wisdom of successive ages had adopted, to determine the ngboi of individuals, •either to life, or property. To this general rule, however, there *472 were some exceptions, as venerable as the rule itself; being ihstanJ ces in which the wisdom of past ages had discovered; that the trial by jury was incompetent to do justice. There were also some in4 novations of a more recent period, wiiicb inconvenience, perhaps, had required. Iu trials by common law, confessions of judgment which are absolute or implied where default is made, as in debt on. bond, or on demurrer where the facts are confessed, are enumerated as instances where the trial by jury is dispensed with. The' courts ot equity, and ordinary, and courts martial, the courts of admiralty, and courts of justices of peace, decide without the intervention of a jury. The reasons for establishing these tribunals, contrary to the principles of the trial by jury, are some of them noticed in the argument before mentioned, and need not again be repeated here. They are, however, exceptions which were familiarly known at the adoption of our constitution, and were intended to be as inviolably preserved in that instrument, as the rule, itself. None others existed, and none others could have been intended. - It becomes then, important, to ascertain precisely what were the powers of a justice of the peace at that period.
In the year 1747, justices of the peace acquired the power to hold plea, either in cases of debt, or for damages, not exceeding £20 currency. The reason given for vesting them with this power, was, the expenses which were incurred in recovering small debts and damages in the court of comm’c'n pleas. I do not enu. rnerate, as an exception to the rule, the summary jurisdiction of the court of common pleas, or county courts ^ for in both cases, either party might demand a trial by jury ; and their Waiving that ■trial, is no more than is done in cases of confession of judgment.
By the county court act of 1785, the jurisdiction of single mi. gistrates, in the counties where county courts were established, was reduced to 20s., and to' cases of debt only. By the amendatory act of 1786, it was extended to £5, in eases of debt. In 1787, it was reduced to £3 ; and in 1788, it was again raised to £5. These alterations, from 1785, expressly relate to those counties Where coun. ty courts were established. In all other parts of the State, the ju. risdiction of magistrates remained at £20, currency, as established by the act of 1747.
So stood the laws on this subject, at the time our State constitution was adopted, which provides, “ that the trial by jury shall be preserved forever, as heretofore.” In no instance, at that period, had justices of the peace exercised jurisdiction as far as $30. But in every possible case cognizable in the common law tribunals. *473 which exceeded in amount £20 currency, in the districts, or £5 sterling, in the bounties, the trial by jury was demandable as a mat. ter of right. If this examination and view of the subject be correct, the act giving magislrates a jurisdiction as far as $30, a juris- ,. ,. -,p , . • , . - , J . ^diction never before possessed, must be a violation of the consfitu. tiou. It is a question of no small importance, to ascertain what is the real jurisdiction of a magistrate, at this time. Whether, in. those parts of the State, where county courts were established, it remains as when the county court system was in operation, at £5 sterling, and in all other parts of the State at £20 currency ? "Whether the act of 1799, establishing ibe jurisdiction at $20 throughout the State, is competent of itself to give that power, or is rendered so by the 9th anide of the amendments of the federal constitution ? Or whether the jurisdiction given by the county court law, was abolished with the system whence it originated ; the act of 1799 be also unconstitutional, and the lawful jurisdiction of magistrates be confiued to £20 currency, throughout the Siaté, agreeably to the act of 1747 ? These inquiries, however important, are not necessary in the question before the court. See Emerick v. Harris, 1 Bin. 416. 2 Dal. 304, 409. 3 Dal. 175, 1 Tuck. Bl. Appendix. 1 Cranch, 137, 173.
flote. The courts of justice, being a co-ordinate branch of the government, liave not only the power, but that it is their duty to declare void, all acts contrary to the manifest-tenor of the constitution, is a clear position, and one which no inan, who wishes well to society, would ever wish to see controverted This right, implies no superiority of the judiciary, to the legislative power. Each department of the government, is the constitutional judge of its own powers; e ach within its own sphere The legislative body may enact a law, which they may conceive to b'e constitutional, but the judiciary may refuse to execute it, if they believe it is notso The interpretation of laws, is the proper and peculiar province of the judiciary. The constitution is the fundamental law. Its meaning must be ascertained and declared: and as it is the law paramount, to which, legis-ative acts must conform, their consistency, or inconsistency, with it, must he considered, and decided on: and the constitution must govern and control the laws made under it. The exercisp of judicial discretion, in determining between two contradictory, or inconsistent acts of the legislature, cannot be deemed a less important, or more legitimate exercise of authority, than that of deter-, • mining between the fundamental law anti legislative acts, and adjudging that the latter shall be executed in subordination to the former 'ihe judges are bound to support and defend the constitution. To give up their judgment, in delfer-. ence to the legislature, would be to betray theii (rust,